## Reams *versus* Pancoast.

Where a lease contained a clause authorizing a confession of judgment in ejectment for non-payment of rent and the tenant failed to pay the rent, and a judgment was confessed for the amount due, and a writ of *haberi facias possessionem* was issued, and under it the sheriff ejected the tenant and delivered possession of the premises to the landlord, the tenant could not maintain an action for the malicious use or abuse of civil process.

It was error, therefore for the judge to charge the jury that they might find punitive damages.

October 28th, 1885.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Allegheny county:* Of October and November Term, 1885, No. 11.

This was an action on the case by Samuel Pancoast against William Reams to recover damages for an alleged improper use of legal process.

Reams leased to Pancoast a house in the city of Pittsburgh for the term of one year from April 1st, 1882, at the rent of nine dollars and fifty cents per month, payable monthly. The lease provided that if the tenant should continue in the premises after the termination of the lease, then the contract should continue in full force for another year, and so on from year to year, until legal notice should be given for removal. The tenant remained on the premises after the termination of the first year.

The lease further provided that the rent should be "payable monthly, which said rent so reserved, the said lessee agrees to pay regularly as it may fall due, or within five days thereafter; in default of which the lessor may, without notice, re-enter upon and take possession of the premises, or, at his option, enter judgment against the lessee or any sub-tenants, in any action of ejectment to be brought to recover possession of the premises, without appeal, writ of error, or stay of execution; and for confessing said judgment this shall be the warrant of any person."

On the 1st of February, 1884, Pancoast was in arrear for

[Reams *v.* Pancoast.]

rent $11.50. He had been in arrear from July, 1882. On the 5th of February, 1884, Reams demanded his rent and not being paid, under the foregoing provision of the lease, he. entered an action of ejectment for the leased premises and caused judgment to be entered thereon and issued a writ of *haberi facias possessionem* under which the sheriff dispossessed Pancoast on the 28th of February, 1884.

The court, EWING, P. J., charged the jury as follows:— On the 17th of January, 1882, Mr. Pancoast, the plaintiff, leased from William Reams, the defendant, a house in the Twenty-third ward, Pittsburg, for a year from the first of April, 1883, at a monthly rent of $9.50. Mr. Pancoast had been in the house as defendant's tenant the year before. [The lease had a provision in it authorizing the landlord in case of a default in the payment of rent for five days to enter a judgment in ejectment against the tenant, issue an execution and dispossess him, and on the 28th of February it seems that he was dispossessed and his goods taken out of the house by the sheriff. Whatever we may think about the hardness of a condition of that sort in a lease, court and jury must take it as it is. I confess to a very great prejudice against it. I would be disposed on an application to open or set aside a judgment to do so, if I had any reasonable ground for granting the application. Such leases I dislike greatly;] but there is a judgment entered in this case unattacked, and execution issued on it, a regular process of the court in accordance with the laws of the land, and we are bound to take the case as we find it. The plaintiff, Mr. Pancoast, claims damages for being set out of his house at that time. The burden is on him to show, not merely that there should not have been that judgment entered, but also to show that the plaintiff in the judgment, the defendant in this case, Mr. Reams, either knew that he had no right to enter or that he had no probable cause for believing that he could have entered; and further, when he entered that he was guilty of malice; in other words, the plaintiff, Mr. Pancoast, is called on to show that it was an abuse of the process of the court in entering the judgment and issuing the execution, and that it was done maliciously. The law presumes, in the first place, that suits are brought and carried on in good faith, and it is not sufficient to show that upon a contest the judgment would have been the other way; the court and jury would have decided that the plaintiff was wrong in his suit. [To obtain damages for the bringing of a suit and its consequences, the plaintiff claiming damages must show that it was brought without reasonable cause on the part of the prosecutor, and that he was actuated by malice towards him. It is the same sort of case that is often tried,

[Reams *v.* Pancoast.]

known under the general term of malicious prosecution. Those actions are usually brought where a man has been charged with a crime and acquitted, and he alleges that his prosecutor acted without reasonable cause and with malice. It is just the same sort of action that is brought where a civil suit has been entered and requires the same elements and grounds. The same reasons will sustain or defeat the action of malicious prosecution, whether that prosecution be civil or criminal.] The parties agree that on the 5th of February last Pancoast was $11.50 in arrears for rent; that Mr. Reams was in the store that day; that he demanded his rent and went away without it—they agree on that, but disagree in regard to what further occurred. Mr. Pancoast alleges that he told Mr. Reams he had it, but could not pay him with the money he had there without taking his change, and that he sent out to get a bill changed. The young men by the name of Glazier, who were called on the part of the plaintiff, so far as I recollect their testimony, did not testify as to Mr. Pancoast saying that it would take all his change, but testify Mr. Pancoast sent his wife out to borrow money. Mr. Reams and Mr. Black state that when Mr. Reams demanded his rent Mr. Pancoast sent out to borrow a part of it, saying that he had not it, and before the wife came back Mr. Reams started away, saying he had not time to remain. Both sides differ in regard to the length of time Mr. Reams waited. The plaintiff's witnesses say it was but a short time; Mr. Reams says it was ten to twelve minutes, and Mrs. Pancoast not returning he then went out; but it appears there was a call to him after he went out of the door. I think all the witnesses agree as to that, Mr. Pancoast saying: "Here is your money," and that he actually had it. Now, if Mr. Reams had a fair offer made to him of his money when in the store on the 5th, and he went away refusing it, or refusing to stay a reasonable time until it should be paid him out of the money then and there on hand, he could not afterwards enter judgment on that account; he would have no right to do so. But there is a question still further back. On the other hand, if he was told distinctly by Pancoast that he didn't have the money there, that he would have to borrow it, and that he sent out for it, Mr. Reams was not bound to wait, and if after waiting some time he started to go and then was told to come back and get his money, I don't think he was bound to come back. I do not think he was bound to assume that the man who had distinctly told him just before he did not have the money there and had to borrow it, had it, when the messenger had not returned, even had he appeared, as a matter of fact, to have had it.

But the law is to be taken as holding a man to reasonable actions. If Mr. Reams was in the store it would not do for him if the money was not handed over to him right at the moment he demanded it, and the party was getting it, to run away saying he refused to wait until he would be paid; that would be equivalent to a refusal of the money. An offer to pay, with a party refusing to take, would be equivalent to a payment. If, then, the plaintiff told the defendant distinctly that he did not have the money there and sent out to borrow it in his presence and with his knowledge, and the defendant waited for a time and then went out of the house without being paid you ought to find for the defendant. If, however, that was not the case, and the defendant was told that plaintiff had the money but did not want to give all his change, and plaintiff sent out to get a bill, and when defendant when about to go away, saying he could not wait, was told his money was there and he could have it, I think that was an offer of the money, and an offer he was bound to accept; I think he could not afterwards enter a judgment on this sharp clause in his lease. You come back from that to the question as to whether or not the defendant had reasonable ground to believe that he had a right to enter this judgment as he did, and that you will determine from the testimony. If you find that he had—if you find the facts to be that he had not this offer of money—did not understand, and was not bound to understand the money was there for him—you have that part of the case for the defendant. To find for the plaintiff you must not only find that the suit was begun by Mr. Reams without probable cause, but that he was actuated by malice towards Mr. Pancoast when he entered the judgment and issued his execution. Now malice is simply the wilful doing of a wrong act. [If the defendant wilfully did a thing that he knew to be wrong against the plaintiff, it would be malice; the want of probable cause does not constitute malice, but it is evidence for the jury from which they may or may not infer it. It is not for the court to say.] If the jury finds there was no reasonable ground for entering this judgment— and we have given you what that reasonable ground would be—still you will have to go farther and find from the evidence that it was done maliciously, and if you find both, then you will find for the plaintiff. You then come to the question of damages. They would be compensation for the loss of the balance of the term running to the 1st of April. I do not think that the notice that was sent there, that Mr. Marshall read, is of itself an absolute re-leasing, but it is undoubtedly a proposition to lease to Mr. Pancoast for another year at $10 a month, and all Mr. Pancoast had to do to make it another

[Reams *v.* Pancoast.]

year's lease was to accept it. The notice to quit and the notice read to you taken together were not an absolute notice to quit; they were an option to pay $10 a month or quit. The damages would be, further, injury to the goods, and any injury that would necessarily arise by reason of being turned out in that way from the loss of business, and also the expense the plaintiff was put to, and inconvenience in getting another house and place for a store.

[The jury is not limited in a case of this sort to mere compensation; they may go beyond that, if they think the act of the defendant was done with a reckless disregard of the rights of another, and with malice, and give what are called punitive damages—something to punish the defendant for the wrong-doing; but we cannot say that this is a case for damages of that kind, nor can we say it is not. That is for you, suggesting, however, that if you should go into the question of punitive damages at all you will be very cautious and careful about it, and bear in mind that a verdict for compensatory damages in this case would be punishment to the defendant.] You will take the case regardless of any feeling you may have about the terms of this lease, or that the court may have (and we admitted our own prejudice against it,) and render the verdict, under these instructions, as you think the evidence warrants.

Verdict for the plaintiff for $300 and judgment thereon. The defendant took this writ assigning for error the portions of the charge included within brackets.

*Joseph Hays*, for the plaintiff in error.—It was certainly the right of the plaintiff in error to have his case tried before an unprejudiced court and an unprejudiced jury. Before entering the judgment Reams *v.* Pancoast, and issuing the *hab. fa.* thereon of which complaint is made, the plaintiff in error informed himself as to the law governing such cases. He found that judgment could be entered, in ejectment, by confession on warrant of attorney such as is contained in the lease of Reams to Pancoast. That cases of that kind have been before this court and sustained, no question having been raised either as to the legality or propriety of the entry of such judgment, and if judgment can be entered it follows, of course, that execution can be had on the judgment. If not, of what use is the judgment?

WOODWARD, J., says:—"A judgment confessed in ejectment must be treated upon the same general principles of law that belong to solemn or judicial confessions in other cases:" Secrist *v.* Zimmerman, 5 P. F. S. 448; Hopkins *v.* West, 2 Norris 109; Hageman et al. *v.* Salisberry, 24 P. F. S.

280; Grossman's Appeal, 6 Out. 138; Smith v. Pringle, 4 Out. 275; Montague v. McDowell, 3 Out. 268.

The jury were charged that the case was the same sort of a case known under the general term of malicious prosecution.

To sustain an action on the case for malicious prosecution it is necessary that the party should have committed an illegal act from which positive or implied damage ensued, but that to bring an action, though there was no good ground for it, is not such illegal act: Kramer v. Stock, 10 Watts, 115; Eberly v. Rupp, 9 Norris, 259; Mayer v. Walter, 14 P. F. S. 286.

The jury were not properly instructed as to the damages; Pittsburgh Southern Railway Co. v. Taylor, 8 Out. 317; Walbridge v. Pruden, 6 Out. 1.

*Thomas M. Marshall* (with whom was *Marshalls & Imbrie*), for the defendants in error.—We are not disposed to quarrel with the authorities cited by the learned counsel for the plaintiff in error, but insist that they have no application in the case. It was proved to the satisfaction of the jury that the plaintiff in error had wantonly and illegally entered a judgment on his lease for the purpose of getting possession of the house in which Mr. Pancoast was carrying on a small business. That Pancoast had offered Reams his rent, but he ran away without taking the money, and made haste to send the sheriff to get possession of the house for him.

There can be no doubt that an action lies for the abuse of civil process when the property or person has been actually interfered with: Cooley on Torts, 189.

It has been wisely determined that for the prosecution of a civil suit, however unfounded, when there has been no interference with either the person or property of the defendant, no action will lie: Muldoon v. Rickey, 7 Out. 110.

Mr. Justice PAXSON delivered the opinion of the court, January 4th, 1886.

It would have been better if the learned judge of the court below had omitted from his charge the expression of his personal dislike to the lease: (See first assignment of error). It was not material to the issue upon trial. Moreover, it was well calculated to prejudice the case of the defendant. The average juryman would not be likely to regard a lease of this nature with much favor, and when the court adds the weight of its condemnation, there is danger of the real merits of the case being lost sight of.

That something of the kind must have occurred in this case seems probable from the fact that the jury rendered a verdict in favor of the plaintiff for $300, when there was nothing to justify it.

[Schuchman *v.* The Borough of Homestead.]

There was no evidence of the malicious use or abuse of civil process. The lease contained a clause authorizing a confession of judgment in ejectment for non-payment of rent. The rent was in arrear; a judgment was confessed; a writ of *haberi facias possessionem* was issued, and under it the sheriff ejected the plaintiff and delivered the possession of the house to the defendant. All this was done in accordance with the forms of law. We attach but little weight to the alleged tender of the rent on the 5th of February. The testimony does not make out a tender. There was some talk, nothing more. It ended in the defendant notifying the plaintiff that he would send a man to put him out of the house the next morning. He did not do so, however. The plaintiff was not ejected until the 28th of February, more than three weeks thereafter. No attempt was made by the plaintiff to pay his rent during that time, although he knew it was in arrear, and he had been told he would be thrown out of the house on account of its non-payment.

Under such circumstances it was error in the learned judge to instruct the jury that they might find punitive damages. The plaintiff was not entitled to any damages whatever. ·

Judgment reversed.